**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LONNELL HUGHES,             )
                                   )
                                   )
          Plaintiff,        )
     v.                     )      Civil Action No. 15-221
                                   )      Judge Nora Barry Fischer
ALLEGHENY COUNTY AIRPORT   )
AUTHORITY a/k/a PITTSBURGH     )
INTERNATIONAL AIRPORT,        )
                                   )
                                   )
          Defendant.     )

**MEMORANDUM OPINION**

## I.   Introduction

Plaintiff Lonnell Hughes ("Plaintiff") initiated this civil action on February 17, 2015 against his employer, the Allegheny County Airport Authority a/k/a Pittsburgh International Airport ("ACAA" or "Defendant"). Plaintiff's Amended Complaint sets forth claims of racial discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.

Presently pending before the Court are Cross-Motions for Summary Judgment filed by Plaintiff (Docket Nos. 113 and 114) and Defendant (Docket No. 116). For the reasons set forth below, Defendant's Motion for Summary Judgment will be GRANTED and Plaintiff's Cross-Motion for Summary Judgment will be DENIED.

## II.   Background

### A.  Local Rule 56.1 Violation

As an initial matter, the Court notes that Plaintiff has failed to properly respond to Defendant's Concise Statement of Material Facts, (Docket No. 117), as required by Local Rule

56.C.1. This rule requires non-moving parties to a motion for summary judgment to file their own concise statement responding to each numbered paragraph in the movant's concise statement.  *See* LCvR 56.C.1.  The non-moving party's concise statement must admit or deny the facts contained in the movant's concise statement; set forth the basis for denial if any fact within the movant's concise statement is not entirely admitted by the non-moving party, with appropriate citation to the record; and set forth, in separately numbered paragraphs, any other material facts at issue.  *See id*.

A non-moving party faces severe consequences for not properly responding to a moving party's concise statement. Any alleged material facts "set forth in the moving party's Concise Statement of Material Facts ... which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."  LCvR 56.E.

In responding to Defendant's summary judgment motion, Plaintiff failed to specifically reply to each paragraph in Defendant's concise statement.  Instead, Plaintiff included a narrative in his Memorandum in Opposition to Defendant's Motion for Summary Judgment, (Docket No. 125), that purports to state his own version of the operative facts, albeit without any citations to the factual record.  Plaintiff later clarified, by way of an email to the Court, that this memorandum was intended to serve as his response to Defendant's concise statement.  (Text Entry, 5/22/17).

Courts provide some leniency to *pro se* litigants when applying procedural rules.  *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244 (3d Cir. 2013) ("[W]e tend to be flexible when applying procedural rules to *pro se* litigants, especially when interpreting their pleadings."). However, the Court "'is under no duty to provide personal instruction on courtroom procedure or

to perform any legal chores for the [*pro se* litigant] that counsel would normally carry out.'" *Id*. (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004)). *Pro se* litigants must adhere to procedural rules as would parties assisted by counsel. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (explaining that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

This Court "requires strict compliance with the provisions of [Local Rule 56]." *E.E.O.C. v. U.S. Steel Corp*., No. 2:10-CV-1284, 2013 WL 625315, at *1 n.1 (W.D. Pa. Feb. 20, 2013) (internal quotations omitted); *see also* Practices and Procedures of Judge Nora Barry Fischer § II.E. (i), Effective Mar. 23, 2010, available at http://www.pawd.uscourts.gov/ Documents/Judge/fischer_pp.pdf. Accordingly, to the extent Plaintiff's allegations of facts fail to address a particular concise statement of material fact, that concise statement of material fact will be deemed admitted. LCvR 56.E; *see also Boyd v. Citizens Bank of Pa., Inc*., No. 12-CV-332, 2014 WL 2154902, at *3 (W.D. Pa. May 22, 2014) (applying Local Rule 56.E and explaining that "to the extent [the *pro se*] Plaintiff's recitation of the facts do not specifically address Defendant's statement of facts, Defendant's statement will be deemed admitted"). The Court will consider any facts properly alleged in Plaintiff's *pro se* responses that specifically contradict Defendant's statement of facts, to the extent that they are supported by the record. *See Boyd*, 2014 WL 2154902, at *3 (stating that "[t]o the extent Plaintiff's statement of 'fact' specifically controverts Defendant's, the Court will consider these facts in determining whether summary judgment should be granted").

**B. Facts**

Plaintiff, an African-American male, commenced employment with the ACAA as a Laborer on February 12, 2001. (Docket No. 117 at ¶ 1). In 2004, Plaintiff filed two charges of

discrimination against the ACAA with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging that he was being subjected to a hostile working environment because of his race. (*Id*. at ¶ 3; Hughes Depo. (Docket No. 119-2) at 213-15). Each of these complaints was dismissed by the EEOC and/or PHRC without a finding of cause. (Docket No. 117 at ¶ 4).

In 2008, Plaintiff initiated an action against the ACAA in the Allegheny County Court of Common Pleas based on a disagreement concerning health coverage. (Hughes Depo. (Docket No. 119-2) at 217-18). Plaintiff's attorney voluntarily dismissed that lawsuit in 2008. (*Id*. at 217; Praecipe to Discontinue (Docket No. 119-4) at 8-9).

In 2013, Plaintiff applied for two Driver positions posted by the ACAA. (Docket No. 117 at ¶ 5). Pursuant to the Collective Bargaining Agreement ("CBA") between the Teamsters and the ACAA, employees seeking a position as a Driver are required to obtain and maintain a Pennsylvania Class "A" Commercial Drivers License ("CDL") with Tank/Hazmat and Passenger commercial endorsements. (*Id*. ¶ 6). Plaintiff possessed the requisite CDL and Hazmat and Tanker commercial endorsements, but has never obtained a Passenger endorsement. (*Id*. at ¶¶ 14-15, 20-21). The two Driver positions were ultimately awarded to candidates who possessed all of the endorsements required by the CBA. (*Id*. at ¶ 22).

CDLs and commercial endorsements are issued by the Pennsylvania Department of Transportation ("PennDOT"), rather than the ACAA. (*Id*. at ¶¶ 10-11). An employee seeking a position as a Driver with the ACAA must obtain the requisite endorsements on his own behalf. (*Id*. at ¶¶ 11). Although the ACAA routinely refers employees to a PennDOT-certified test administrator named Ron Burkhart, Burkhart is not an ACAA employee and is not subject to the

ACAA's control.  (*Id*. at ¶ 12).  ACAA employees are not required to take the endorsement skills tests with Burkhart.  (*Id*. at ¶¶ 13, 19).

In the fall of 2013, Plaintiff bid for two additional positions: (1) a position on the 3:00 p.m. to 11:00 p.m. shift, and (2) a temporary position on the 6:00 a.m. to 2:20 p.m. shift.  (*Id*. at ¶ 25).  Plaintiff was selected for the position on the 3:00 p.m. to 11:00 p.m. shift based on seniority, but was denied the second position because he was not the most senior person who bid for that position.  (*Id*. at ¶ 26).

 Beginning in 2013, Plaintiff received several "Failure to Punch" notifications from the ACAA because of his failure to comply with the ACAA's time card policy.  (*Id*. at ¶¶ 27-29).  Failure to Punch violations are minor infractions that do not typically result in disciplinary action.  (*Id*. at ¶ 30).  Plaintiff did not receive any discipline based on the Failure to Punch notifications that he received.  (*Id*. at ¶ 31).

On January 6, 2014, Plaintiff was randomly selected for a drug test.  (*Id*. at ¶ 33).  Pursuant to the ACAA's Substance Abuse Policy, a minimum of 50% of the employees covered by the policy must be randomly drug tested each year.  (*Id*. at ¶ 32).  The ACAA utilizes an unaffiliated third-party administrator, Heritage Valley Health System ("Heritage Valley"), to administer its random drug testing program.  (*Id*. at ¶ 34).  Although Plaintiff complained that his drug test had been intentionally scheduled during a period of time in which he was taking prescription pain medication, Plaintiff passed his drug test.  (*Id*. at ¶¶ 36-37).

After being notified of his selection for random drug testing, Plaintiff became angry and irate.  (*Id*. at ¶ 38).  Plaintiff approached his supervisor, Mark Pobicki, and an Administrative Assistant, Terry Mitchell, and displayed behavior that Pobicki and Mitchell described as "loud and angry" and "aggressive."  (*Id*. at ¶ 40; Pobicki Statement (Docket No. 119-14) at 1; Mitchell

Statement (Docket No. 119-15) at 1-2). As a result, the ACAA contacted the Allegheny County Police Department to report Plaintiff's behavior. (Docket No. 117 at ¶ 41). The ACAA also placed Plaintiff on paid administrative leave and referred him to a physician for a "fit for duty evaluation" to determine whether he was medically fit to return to work. (*Id.* at ¶ 44).

Following Plaintiff's evaluation, the ACAA received a letter from the referred physician stating that Plaintiff was unfit for duty. (Docket No. 119-18). Based on this determination, Plaintiff was placed on unpaid leave. (*Id.* at ¶ 45-46). Plaintiff remained on unpaid leave from February 9, 2014, through May of 2014, at which time he returned to work as a Laborer. (*Id.* at ¶¶ 46-49).

### III.    Procedural History

Plaintiff initiated the instant action on February 17, 2015, asserting claims against both the ACAA and Laborers Local Union No. 1058. (Docket No. 1). Plaintiff filed an Amended Complaint on August 19, 2015. (Docket No. 18). On July 7, 2016, the parties stipulated to the dismissal of Laborers Local Union No. 1058 with prejudice. (Docket No. 63).

On October 31, 2016, Plaintiff filed a second motion to amend his complaint, seeking to add an allegation of disparate treatment based on the same conduct underlying his Amended Complaint. (Docket No. 96). The Court granted the motion on December 12, 2016, (Docket No. 98), but Plaintiff never filed the proposed amendment.

On March 16 and 17, 2017, Plaintiff filed a pair of documents that he captioned as a "Motion for Summary Judgment" and a "Cross-Motion for Summary Judgment." (Docket Nos. 113 and 114). Despite labeling each document as a summary judgment motion, Plaintiff's first document, (Docket No. 113), is essentially a rebuttal filed in anticipation of the ACAA's own motion for summary judgment (which, at the time, had yet to be filed). His second motion,

(Docket No. 114), contains only a loose factual narrative that appears to be drawn nearly verbatim from his Amended Complaint. Neither motion references any pertinent case law or citations to the factual record. Defendant responded to each motion on April 17, 2017. (Docket Nos. 121 and 122).

Defendant filed its Motion for Summary Judgment, (Docket No. 116), on March 17, 2017, accompanied by a Concise Statement of Material Facts, (Docket No. 117), and a Brief in Support, (Docket No. 118). Plaintiff filed a brief in response on April 30, 2017. (Docket No. 125). Defendant filed a reply on May 15, 2017. (Docket No. 128). This matter is now ripe for review.

## IV.  Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment will only be denied when there is a genuine issue of material fact, i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). As to materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In determining whether the dispute is genuine, the court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. The court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy*, 413 F.3d at 363; *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (quoting *Fuentes v. Perski*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)). In evaluating the evidence, the court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

**V.    Discussion**

**A.  Race-based discrimination**

Plaintiff alleges that Defendant engaged in a lengthy pattern of racial discrimination on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981. Title VII's anti-discrimination provision, codified at 42 U.S.C. § 2000e-2(a), makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. The United States Court of Appeals for the Third Circuit has stated that, in the employment context, the "substantive elements" of a discrimination claim under §

1981 are "generally identical" to those of a discrimination claim under Title VII. *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009).

Because the scope of protection provided by § 1981 is not materially different from that provided under Title VII, the Court's analysis of Plaintiff's Title VII claims will be similarly applicable to his § 1981 claims. Such claims are analyzed pursuant to the familiar three-step burden-shifting framework articulated in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-05 (1973). *See Williams v. Phila. Hous. Auth. Police Dept.*, 380 F.3d 751, 759 (3d Cir. 2004). Pursuant to this framework, a plaintiff must first make out a *prima facie* case of discrimination or retaliation. *Id.* at 761 (citing *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). If the plaintiff is successful, the burden shifts to the defendant to articulate a legitimate, non-discriminatory rationale for each challenged employment action. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Finally, the plaintiff bears the burden of demonstrating, by a preponderance of the evidence, that the defendant's articulated reason for the challenged action is a pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 804-05; *Bielich v. Johnson & Johnson, Inc.*, 6 F. Supp. 3d 589, 605 (W.D. Pa. 2014).

In the instant case, Plaintiff contends that he suffered discrimination on the basis of his race when the Defendant: refused to promote him to the position of Driver; routinely denied his bids for positions on different shifts; issued him several "Failure to Punch" notifications; subjected him to "random" drug testing in a targeted manner; and placed him on paid and unpaid administrative leave. To establish a *prima facie* case of discrimination with respect to any of these claims, Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for the position that he held or sought; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of unlawful

discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 1999). Although the parties agree that Plaintiff, an African American, is a member of a protected class, Defendant contends that Plaintiff has failed to satisfy the remaining elements of his *prima facie* case with respect to any of his claims. Each will be discussed in turn.

### 1. Failure to promote to Driver

Plaintiff first claims that he was unfairly denied a promotion to the position of Driver in favor of two white candidates, Nick Sannsota and Brian West. (Docket No. 125 at ¶ 16). However, the record clearly demonstrates that Plaintiff was not qualified for the Driver position. Plaintiff's CBA explicitly requires any employee seeking a position as a Driver to have a CDL with a Passenger endorsement. (Docket No. 117 at ¶ 6). Plaintiff concedes that he has never obtained this endorsement, rendering him objectively unqualified for the Driver position.[1] (*Id.* at ¶¶ 14-15, 20-21). Because he was not qualified for the promotion that he sought, Plaintiff cannot make out a *prima facie* case of discrimination on this basis. *See, e.g.*, *Makky v. Chertoff*, 541 F.3d 205, 216 (3d Cir. 2008) (rejecting plaintiff's failure-to-promote claim because plaintiff lacked a mandatory security clearance for the position he sought); *Young v. St. James Management, LLC*, 749 F. Supp. 2d 281, 297 (E.D. Pa. 2010) (ruling that plaintiff was not qualified because he lacked two mandatory licenses that were required for the position); *Ogawa v. Nationwide Fin. Srvs., Inc.*, No. 14-CV-2147, 2015 WL 1514899, at *9 (E.D. Pa. Apr. 2, 2015) (granting summary judgment on race discrimination claim because plaintiff lacked the objective requirements for the position she sought).

Plaintiff suggests that Burkhart, the test-administrator frequently utilized by ACAA employees, has repeatedly refused to schedule the test for Plaintiff to obtain his Passenger endorsement. (Docket No. 125). Even if this were the case, it is undisputed that Burkhart is not

---

[1] In contrast, the two white candidates, Sannsota and West, each satisfied this mandatory requirement. (*Id.* at ¶ 22).

employed by the Defendant or subject to the Defendant's control with respect to scheduling, testing, or any other matters. (Docket No. 117 at ¶ 12). Moreover, Defendant's employees are not required to use Burkhart for their testing. (*Id*. at ¶¶ 13, 19). Consequently, even if Plaintiff could produce evidence that Burkhart refused to schedule him for testing due to his race – which he has not – that decision is not attributable to the ACAA.[2]

### 2. Denial of bids for other shifts

Plaintiff contends that, beginning in 2013, he was routinely denied bids for various shifts because of his race. The record belies this contention. Plaintiff was successful in one of the two bids that he placed during the fall of 2013, and each bid was awarded entirely on the basis of seniority. (Docket No. 117 at ¶¶ 25-26). Plaintiff does not allege that the ACAA's policy of awarding bids on the basis of seniority is inherently discriminatory, nor does he cite any evidence that the policy was not followed with respect to his own bids. Because it is undisputed that the positions were awarded on an entirely objective basis, Plaintiff cannot establish that the positions were awarded under circumstances that could give rise to an inference of unlawful discrimination.

Even if Plaintiff could satisfy his *prima facie* burden as to this claim, Defendant's reliance on seniority to award bids also provides a legitimate, non-discriminatory rationale for the challenged employment decisions. *McDonnell Douglas*, 411 U.S. at 804-05. Plaintiff has not cited any evidence suggesting that the use of seniority to award shifts was a pretext for

---

[2] In his Memorandum in Opposition to Defendant's Summary Judgment Motion, Plaintiff states that Defendant told him to pay for his own Passenger endorsement test while providing free testing for white employees. (Docket No. 125 at ¶ 18). He also implies that Defendant was willing to arrange the test for white employees but refused to arrange it for him. (*Id*. at ¶ 20). Plaintiff does not cite to any portion of the record to support of these allegations, and the Court's own extensive review of the record has not revealed any evidence to support these claims. It is axiomatic that a plaintiff cannot survive summary judgment simply by offering unsupported allegations in his own legal briefs. *See*, *e.g.*, *Jersey Cent. Power & Light Co. v. Lacey Tp.*, 772 F.2d 1103, at 1109-10 (3d Cir. 1985) ("Legal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion.").

unlawful discrimination.  *See*, *e.g.*, *Clements v. Peirce-Phelps, Inc.*, No. 12-CV-6897, 2014 WL 3030520, at *6 (E.D. Pa. July 2, 2014) (rejecting racial discrimination claim where the difference between how the plaintiff and a non-protected employee had been treated could be explained by seniority); *Benjamin v. City of Atlantic City*, No. 12-CV-3471, 2014 WL 884569, at *6 (D. N.J. Mar. 6, 2014) (granting summary judgment where plaintiff's selection for demotion as part of a reduction in force was made on the basis of seniority).

### 3.  "Failure to Punch" notifications

Plaintiff contends that "[i]n 2013 and 2014, [he] received discriminatory and retaliatory "Failure to Punch" notifications that were not only inaccurate but wrongly criticized [him] for being seconds early."  (Docket No. 18 at ¶ 41).  A Failure to Punch notification is issued when an employee fails to punch in or punch out at the beginning or end of his shift.  (Docket No. 119-9 at 1, 3, 5).  Although Plaintiff opines that these notifications were issued in a discriminatory manner, he conceded during his deposition that the ACAA issued them to employees of all races who improperly punched the time clock.  (Hughes Depo. (Docket No. 119-2) at 242-43).  He also acknowledged that the notifications are "minor" and that employees are not subjected to discipline as the result of a Failure to Punch.  (*Id*. at 243-44).  Because the record reflects that the notifications are issued in a race-neutral manner and ultimately have no impact on the terms, conditions, or privileges of an employee's employment, Plaintiff has failed to establish that he suffered an adverse employment action under circumstances that could give rise to an inference of unlawful discrimination.

### 4.  Random drug testing

Plaintiff next asserts that he was selected for "random" drug testing in a targeted manner, presumably based on his race (although this is not clearly alleged).  Plaintiff accuses Defendant

of intentionally scheduling him for testing at a time when it knew that he had been prescribed pain medication following dental surgery, apparently in order to punish him after inducing a positive drug test result. (Docket No. 18 ¶¶ 43-44). Plaintiff contends that he only passed his drug test because he caught on to the scheme and refused to take his pain pills. (Docket No. 125 at ¶ 27).

As noted above, Defendant has a random drug testing policy which specifies that a minimum of 50% of the organization's employees must be randomly tested each year. (Docket No. 117 at ¶ 32). Defendant utilizes an unaffiliated, independent third-party to administer both the selection process and the actual testing. (*Id*. at ¶ 34). Although Plaintiff accuses Defendant of being able to "influence who takes the test," (Docket No. 125 at ¶ 26), Plaintiff cites no evidence for this proposition beyond his own subjective belief that this is the case:

> Q: Are you aware of whether Heritage Valley notifies the Airport Authority about the random drug test or not? Do they make the selection or is it the Airport Authority?
>
> A: It's in my opinion the Airport Authority makes the selection.
>
> Q: Why is that your opinion?
>
> A: To the best of my knowledge.
>
> Q: What's your basis for having that opinion?
>
> A: Because I was subject to it and I know that. I just believe it's not random and it's not picked by Heritage.

(Hughes Depo. (Docket No. 119-1) at 41-42). Plaintiff also concedes that he did not suffer any adverse employment action as the result of being selected for a random drug test. (Docket No. 125 at ¶ 27). In short, Plaintiff cannot establish that the drug test was administered in a manner

that created an inference of unlawful discrimination or that he suffered an adverse employment action as the result of that test.

### 5. Administrative leave

Finally, Plaintiff maintains that his 2014 suspension was the product of discriminatory animus because it occurred immediately after he complained about the random drug testing process. However, the Third Circuit Court of Appeals has held that "placing an employee on paid administrative leave where there is no presumption of termination" is not an adverse employment action for Title VII purposes. *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015). As explained by the Court:

> A paid suspension pending an investigation of an employee's alleged wrongdoing does not fall under any of the forms of adverse action mentioned by Title VII's substantive provision. That statute prohibits discrimination in hiring, firing, and "compensation, terms, conditions, or privileges of employment." § 2000e–2(a)(1). A paid suspension is neither a refusal to hire nor a termination, and by design it does not change compensation. Nor does it effect a "serious and tangible" alteration of the "terms, conditions, or privileges of employment," . . . because "the terms and conditions of employment ordinarily include the possibility that an employee will be subject to an employer's disciplinary policies in appropriate circumstances[.]" We therefore agree with our sister courts that a suspension with pay, "without more," is not an adverse employment action under the substantive provision of Title VII.

*Jones*, 796 F.3d at 326 (internal quoting sources omitted).

Here, the record reveals that Plaintiff's suspension resulted from an incident in which he became "loud," "angry", and "aggressive," prompting a referral for a medical determination as to his fitness for duty. Courts have routinely held that paid suspensions of this nature do not constitute adverse employment actions. *Id.* at 326; *see also Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) ("[A]dministrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action"); *Von Gunten v. Maryland*, 243

F.3d 858, 869 (4th Cir. 2001) (holding that "placing [an employee] on administrative leave with pay for a short time to allow investigation" is not an adverse action).

With respect to Defendant's decision to place Plaintiff on unpaid administrative leave, the record establishes that this event occurred because Plaintiff had received a medical determination that he was unfit for duty. (Docket No. 119-18). Plaintiff has produced no evidence suggesting that this determination occurred because of his race. For example, he does not suggest that non-protected employees would not have been placed on unpaid leave under the same circumstances. *See*, *e.g.*, *Burton v. Pennsylvania State Police*, 990 F. Supp. 2d 478, 506 (M.D. Pa. 2014) ("Plaintiff did not — indeed he could not — present any evidence showing a nonprotected employee in violation of three field regulations who received discipline less severe than that of Plaintiff's. [Thus,] Plaintiff has failed to raise an inference of discrimination as to the investigation or the suspension, and his *prima facie* case fails as a result."). Nor does he allege the existence of "other evidence regarding the circumstances of [his suspension] from which an inference of racial discrimination can be drawn," such as racially-charged comments or conflicting explanations for the adverse decision. *See*, *e.g.*, *Dykes v. Marco Group, Inc.*, 222 F. Supp. 3d 418, 428 (E.D. Pa. 2016). Instead, he relies entirely on his own conclusory averment that "[he] think[s] all of [his] experience[s] have been because of [his] race." (Hughes Depo. (Docket No. 119-3) at 294-95). Plaintiff's unsupported, subjective belief that his race played a role in his suspension is simply not enough to establish an inference of discrimination at the summary judgment stage. *Groeber v. Friedman & Schuman, P.C.*, 555 F. App'x 133, 135 (3d Cir. 2014) (explaining that "[the plaintiff's] subjective belief that race played a role in these employment decisions . . . is not sufficient to establish an inference of discrimination").

In short, Plaintiff has failed to point to any evidence suggesting that he suffered an adverse employment action under circumstances that could give rise to an inference of unlawful discrimination or that Defendant's explanations for those allegedly adverse decisions were a pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 804-05; *Makky*, 541 F.3d at 214. Defendant is entitled to summary judgment as to each of those claims.

## B. Retaliation

Plaintiff next alleges that he suffered a number of retaliatory acts in the wake of the EEOC charges that he filed in 2004 and the lawsuit that he filed against the ACAA in 2008. To state a *prima facie* case of retaliation pursuant to Title VII and Section 1981, a plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the participation in the protected activity and the adverse action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006). Defendant concedes that Plaintiff engaged in protected activity, but maintains that Plaintiff cannot satisfy either the second or third prong of this analysis.

As discussed above, several of the events cited by Plaintiff simply do not amount to adverse employment actions within the Title VII context. An employee's placement on paid administrative leave is "not an adverse employment action under the substantive provision of Title VII." *Jones*, 796 F.3d at 326. Plaintiff's receipt of Failure to Punch notifications and his selection for a random drug test did not result in any sort of discipline or otherwise alter the terms, conditions, or privileges of his employment. As such, these "minor" actions cannot form the basis for a Title VII retaliation claim. *Moore*, 461 F.3d at 341. *See also Melton v. U.S. Soc. Sec. Admin.*, No. 10-CV-7217, 2012 WL 3844379, at *7 (E.D. Pa. Sep. 5, 2012) (noting that "minor events, such as 'complaints of "increased scrutiny" and "reprimands about plaintiff's

lateness" would not, under most circumstances, rise to the level of materially adverse actions'")

(quoting *Harley v. Geithner*, No. 07-CV-3559, 2010 WL 3906642, at *14 (D.N.J. Sep. 29,

2010)).

With respect to his remaining retaliation claims, Plaintiff must still demonstrate that there

was a causal connection between his participation in a protected activity and the adverse action.

The United States Supreme Court has emphasized that Title VII retaliation claims must

ultimately be proven according to "traditional principles of but-for causation." *Univ. of Texas*

*Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2533 (2013). However, in the context

of a plaintiff's burden at the *prima facie* stage, the Third Circuit Court of Appeals recently

clarified that a plaintiff must only produce evidence "sufficient to raise the inference that her

protected activity was the *likely reason* for the adverse employment action." *Carvalho-Grevious*

*v. Delaware State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017) (quoting source omitted) (emphasis in

original). As explained by the Court:

> [T]he Supreme Court has made clear that "Title VII retaliation claims
> must be proved according to traditional principles of but-for causation."
> [*Nassar*, 133 S.Ct. at 2533]. Understanding the retaliation plaintiff's
> ultimate burden, we turn to the question of whether that burden differs at
> the *prima facie* stage of the case. We hold that it does. *See Marra v.*
> *Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) ("In assessing
> causation, we are mindful of the procedural posture of the case."); *see*
> *also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n. 5 (3d Cir.
> 2000) ("[T]he relative evidentiary impact of [causal evidence] may vary
> depending upon the stage of the *McDonnell Douglas* proof analysis and
> the procedural circumstance," *i.e.*, if proffered to satisfy a plaintiff's
> *prima facie* case for the purpose of summary judgment or if proffered to
> reverse a verdict). Consistent with our precedent, a plaintiff alleging
> retaliation has a lesser causal burden at the *prima facie* stage. *See e.g.*,
> *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008)
> ("[T]he *prima facie* requirement for making a Title VII claim 'is not
> onerous' and poses 'a burden easily met.'" (quoting *Texas Dep't of*
> *Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d
> 207 (1981))).

Some circuits have found, albeit without much in the way of explanation, that a plaintiff must prove but-for causation as part of the *prima facie* case of retaliation. *See EEOC v. Ford Motor Co*., 782 F.3d 753, 770 (6th Cir. 2015) (en banc); *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014). We decline now to heighten the plaintiff's *prima facie* burden to meet her ultimate burden of persuasion. That is because we agree with the Fourth Circuit that to do so

> would be tantamount to eliminating the *McDonnell Douglas* framework in retaliation cases . . . . If plaintiffs can prove but-for causation at the *prima facie* stage, they will necessarily be able to satisfy their ultimate burden of persuasion without proceeding through the pretext analysis. Had the *Nassar* Court intended to retire *McDonnell Douglas* and set aside 40 years of precedent, it would have spoken plainly and clearly to that effect.

> *Foster*, 787 F.3d at 251. We conclude that at the *prima facie* stage the plaintiff must produce evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse [employment] action." *Kachmar v. SunGard Data Systems, Inc*., 109 F.3d 173, 177 (3d Cir. 1997) (emphasis added) (internal quotation marks omitted).

*Id.* at 258-59.

Simply put, Plaintiff cannot survive summary judgment unless he can produce evidence from which a reasonable factfinder could conclude that his 2004 EEOC charges and/or his 2008 lawsuit against the ACAA were the *likely reason* that he was denied a promotion to the position of Driver or placed on unpaid leave. He has failed to meet even this light burden.

As an initial matter, the Court notes that the amount of time between Plaintiff's protected activity and the allegedly adverse employment actions is not suggestive of retaliation. The temporal proximity between a protected activity and an adverse employment action may provide some inference of a causal connection where the proximity is "unusually suggestive of retaliatory motive." *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000). However, Plaintiff filed his lawsuit against the ACAA in 2008, over five years prior to his request to be promoted to Driver and the events leading up to his unpaid suspension. His 2004 EEOC and PHRC charges

are even further attenuated from those adverse actions. Courts have routinely found causation lacking in situations where far shorter temporal gaps separated the protected activity from the adverse employment action. *See*, *e.g.*, *C.M. v. Bd. of Educ.*, 128 F. App'x 876, 883 (3d Cir. 2005) (finding that a three month gap between protected activity and adverse employment action was too broad to support causation); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760-61 (3d Cir. 2004) (two month gap did not support inference of causation); *Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 50 (W.D. Pa. 2010) (seven month gap suggested lack of causation).

Where the temporal proximity is not unusually suggestive, "a court may consider whether the record evidence, as a whole, is sufficient to raise an inference of causation." *Kahan v. Slippery Rock Univ. of Pennsylvania*, 50 F. Supp. 3d 667, 701 (W.D. Pa. 2014). Such evidence may include "evidence of ongoing antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." *Id.* (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)). In his legal memoranda, Plaintiff generally alleges that "[a]ny statements from Mr. Mark Pobicki and Ms. Terry Mitchell [are] not credible" and that "[t]he ACAA has a history of removing African American males shortly before retirement age." (Docket No. 125 at ¶¶ 23-24). However, he has not supported these conclusory averments with any evidence or citations to the record. In the absence of any evidence to support his claims, Plaintiff cannot meet his burden of establishing a *prima facie* case of retaliation.

Even if Plaintiff had met his *prima facie* burden, Defendant has provided a legitimate, non-discriminatory explanation for each of the adverse actions. Plaintiff was not eligible to be promoted to the Driver position because he lacked a certification required by the CBA, and his

unpaid suspension was the result of a medical fitness determination occasioned by Plaintiff's aggressive behavior towards several co-workers. In order to survive summary judgment, Plaintiff must point to evidence in the record demonstrating that the defendant's articulated reasons for these challenged actions are a pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 804-05.

Plaintiff has not even attempted to meet this burden. He does not dispute that he never obtained the Passenger endorsement required by the CBA for the promotion that he sought. Plaintiff's co-workers provided uncontradicted statements describing Plaintiff's angry and aggressive behavior following his selection for random drug testing. (Docket No. 117 at ¶ 40). Following that incident, a physician concluded that Plaintiff was not medically fit to return to work. (Docket No. 119-18). In the complete absence of any evidence suggesting that either of these processes were tainted by racial animus, Plaintiff has failed to provide any grounds for a reasonable factfinder to conclude that Defendant's non-discriminatory explanations for those employment actions were a pretext for unlawful discrimination.

## VI.   CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment, (Docket No. 116), is GRANTED and Plaintiff's Motion for Summary Judgment, (Docket Nos. 113, 114), is DENIED. Judgment will be entered in favor of the Defendant with respect to all counts of the Amended Complaint.

An appropriate Order follows.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:          July 6, 2017

cc/ecf:        All counsel of record

                Lonnell Hughes
                567 Rosedale Street
                Pittsburgh, PA 15208
                (E-mail & Regular Mail)